**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| NACIMA TAKLIT,<br>MOUNIR BENLALAM,<br><br>         Plaintiffs,<br><br>         v.<br><br>PAMELA BONDI in her official capacity as<br>Attorney General of the United States,<br>KRISTI NOEM in her official capacity as<br>Secretary of Homeland Security,<br>KIKA SCOTT in her official capacity as Senior<br>Official Performing the Duties of the Director of<br>USCIS,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:25-cv-00925-TWP-MG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Pamela Bondi, Attorney General of the United States, Kristi Noem, Secretary of the Department of Homeland Security, and Kika Scott, Director of the United States Citizenship and Immigration Services (collectively, "Defendants"). (Filing No. 9). Plaintiffs Mounir Benlalam ("Benlalam") and Nacima Taklit ("Taklit") (together, "Plaintiffs") filed this action pursuant to the Administrative Procedure Act, as well as the Mandamus Act, seeking to compel Defendants to take action on Plaintiffs' immigration petition (Filing No. 1). Their claims stem from a pending I-601 application that was filed by Mounir Benlalam with the United States Citizenship and Immigration Services on September 25, 2023 (Filing No. 1 at 12). That application remained pending as of February 10, 2026 (Filing No. 17). For the reasons discussed, the motion is **granted**.

## I.       BACKGROUND

Benlalam is a citizen of Algeria presently residing there ([Filing No. 1 at p. 2](#)). He is married to Taklit, a United States citizen residing in Indianapolis, Indiana. *Id.* at p. 6; *id.* ¶¶ 28–30.[1] Benlalam and Taklit share three biological children, who all live with Taklit in Indianapolis. *Id.* ¶ 30.

In February 2020, the couple began the process of Benlalam moving to the United States. *Id.* ¶ 31. To begin that process, Taklit submitted a Petition for Alien Relative on behalf of Benlalam with the United States Citizenship and Immigration Services ("USCIS") via Form I-130. *Id.* ¶¶ 31–32. The I-130 petition was approved in November 2022, which was forwarded to the National Visa Center for pre-processing. *Id.* ¶ 32. On November 21, 2022, a case was created at the National Visa Center, and Benlalam's immigrant visa application was assigned a consular case number. *Id.* ¶ 33. Benlalam then paid the appropriate processing fees and submitted an Online Immigrant Visa and Alien Registration Application to the United States Embassy. *Id.* ¶ 35.

On April 30, 2023, Benlalam attended an interview at the Consular Section of the United States Embassy in Algiers. *Id.* ¶ 35. At the conclusion of his interview, Benlalam was informed that his visa application was refused under Section 212(a)(6)(C)(i) of the Immigration and Nationality Act. *Id.* ¶ 36. This was because Benlalam indicated that he "sought to procure an immigration benefit by fraud or by concealing or misrepresenting (immigration fraud of misrepresentation)." ([Filing No. 9-1 at ¶ 4](#)).[2] Benlalam was informed that he was eligible to file an Application for Waiver of Grounds of Inadmissibility with USCIS, which he did by submitting

---

[1] Any reference to a paragraph in the Complaint refers to the numbered paragraphs beginning at paragraph 27 on page 9 of the Complaint.

[2] "Where a party raises the issue of subject matter jurisdiction, a court need not simply rely on the facts alleged in the complaint, but also may consider extrinsic evidence to determine whether it can exercise jurisdiction." *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008).

Form I-601 along with the applicable filing fee. *Id.* ¶ 38. Benlalam's submitted I-601 application was received by USCIS on September 25, 2023. *Id.*

In late July 2024, with his I-601 application still pending, Benlalam submitted a request for expedited adjudication. *Id.* ¶ 43. This request was denied on August 21, 2024, as it was determined that Benlalam did not meet the criteria for expedited review. *Id.* ¶¶ 43, 45. Since the denial of his request for expedited adjudication, Benlalam has not received any substantive update on his I-601 application, and no final determination has been made. *Id.* ¶¶ 44, 46.

Not satisfied with lack of action by the USCIS, Plaintiffs initiated this action on May 12, 2025 (Filing No. 1). Defendants then appeared and moved for dismissal on August 14, 2025, which was fully briefed on September 22, 2025 (Filing No. 11; Filing No. 14). In the meantime, the Court ordered the parties to appear before the magistrate for a status conference to determine whether the parties could resolve this action without further judicial involvement. That conference took place on February 10, 2026, but the parties were unable to come to a resolution (Filing No. 15; Filing No. 17).

## II.     LEGAL STANDARD

### A.     Motion to Dismiss under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**B.**    **Motion to Dismiss under Rule 12(b)(6)**

Similarly, Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*,

556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.    DISCUSSION

Defendants seek to dismiss each of Plaintiffs' claims brought under the Administrative Procedure Act, in addition to the claim for mandamus relief. As a preliminary matter, the Court notes that Defendants do not state which federal rule supports dismissal of Plaintiffs' claims. Defendants argue generally that the Court lacks subject matter jurisdiction to award the requested relief (though they do argue the Mandamus Act claim "fails") (Filing No. 9 at ¶ 4). But a district court must distinguish between the power to adjudicate and the authority to grant relief—only the former necessarily implicates the subject matter jurisdiction of a district court. *See Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386 (7th Cir. 2003) (citation omitted).

In context of this case, "the latter will depend on whether the statute on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States." *Id.* Unless the claim is so frivolous that it fails to plead a federal question under 28 U.S.C. § 1331, "the district court has jurisdiction . . . to determine whether the prerequisites for mandamus relief have been satisfied." *Id.*; *see also Cossio v. Air Force Ct. of Crim. Appeals*, 129 F.4th 1013, 1021 n.3 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 240 (2025) (following *Ahmed*).

As Plaintiffs seek to compel an officer or employee of the United States to perform a duty they allege is owed to them pursuant to a statute "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, the Court finds that it has subject matter jurisdiction to consider whether the prerequisites for mandamus relief have been satisfied. Defendants' motion

with respect to the mandamus relief will be construed as a motion to dismiss for failure to state a claim upon which relief can be granted.

Turning now to the substance of Defendants' motion, they have moved to dismiss Plaintiffs' claims brought under the Administrative Procedure Act for lack of subject matter jurisdiction, arguing that judicial review is specifically exempted by statute. With respect to the claim for mandamus relief, Defendants argue that Plaintiffs' claim fails because Benlalam does not have a clear right to, nor does USCIS have a duty to, adjudicate the I-601 application within a specified time frame. Each claim will be addressed in turn.

A.    **Administrative Procedure Act**

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," may seek judicial review pursuant to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702. "Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 61–62 (2004) (citing 5 U.S.C. § 704) (emphasis in original). Agency action is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2). Where a claim for judicial review is predicated on the final term, an agency's "failure to act," the APA does permit a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also SUWA*, 542 U.S. at 63.

However, the APA is not without limits and curtails a court's ability to review actions taken (or not taken) by agencies in several ways. For instance, a claim under § 706(1), that agency action was unlawfully withheld or unreasonably delayed, "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 63 (emphases in original). The APA is further limited where "statutes preclude judicial review" or the

respective "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The former precludes review in this case.

Plaintiffs seek review of Benlalam's pending I-601 application, which is governed by 8 U.S.C. § 1182 (Filing No. 10 at 4; Filing No. 11 at 8). Section 1182 provides an avenue for an individual to seek a waiver of a finding that he or she is inadmissible for entry into the United States, in this case, because of a finding that the individual, "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i). In other words, once Benlalam's visa application was refused under the fraud or misrepresentation provision, he could seek a waiver, which he did by submitting his Form I-601. *See id.* §§ 1182(a)(6)(C)(iii), 1182(i)(1). But the same subsection that permits Benlalam to apply for a waiver also precludes judicial review of any decision or action regarding the waiver application. The statute provides in full: "No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)." *Id.* § 1182(i)(2).[3] As the Seventh Circuit stated in a similar case: "No review means no review; the statute does not need to list all of the many potential legal theories that are not reviewable." *Soni v. Jaddou*, 103 F.4th 1271, 1273 (7th Cir. 2024), *reh'g denied*, No. 23-3220, 2024 WL 3683115 (7th Cir. Aug. 6, 2024).

The *Soni* court addressed an immigration waiver provision under § 1182 that is virtually indistinguishable from that at issue in this case. *See id.* The plaintiff in *Soni* was a citizen of Canada

---

[3] While the provision at issue grants the Attorney General authority to waive a finding of inadmissibility, enforcement of the Immigration and Nationality Act has been transferred to the Secretary of Homeland Security. *See Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Lab.*, 745 F.3d 653, 659 (3d Cir. 2014) (citing 6 U.S.C. §§ 202, 291 557); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("Although many of the provisions at issue in this case refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act.").

and had been in the United States unlawfully for more than a year. *Id.* at 1272. To obtain an immigrant visa after being in the United States unlawfully, *Soni* was required to leave and wait abroad for at least ten years or, if eligible, apply for a waiver of inadmissibility, using a Form I-601A application, while still in the United States. *Id. Soni* chose the latter, and after his application had been pending for 17 months, *Soni* sued asking the district court to direct the agency to render a decision within 14 days. *Id.* The district court dismissed for lack of jurisdiction. *Id.*

The Seventh Circuit affirmed, finding that the statute foreclosed judicial review. *Id.* at 1272–73. The statute at issue in *Soni* reads: "No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause." *Id.* The court found the terms "decision *or action regarding*" prevented jurisdiction because "[s]etting priorities—for example, how many employees to assign to processing applications under this clause, as opposed to handling other duties—is an 'action regarding' waivers." *Id.* at 1273.

Benlalam essentially wants the same relief sought in *Soni*: the issuance of an order "directing Defendants to take all steps necessary to adjudicate [his] I-601 Application for Waiver of Grounds of Inadmissibility, including completing any necessary background checks and interview, within thirty (30) days from the date of the order." (Filing No. 1 at 25). Plaintiffs do not address *Soni* in their response and instead focus on the difference in the forms used to apply for the respective waivers (Filing No. 11 at 9). They argue that I-601A applications (at issue in *Soni*) are governed by § 1182(a)(6)(C)(iii), while I-601 applications (at issue here) are governed by § 1182(i)(1) (Filing No. 11 at 9). That fact makes no difference in the analysis. An I-601A application is used to apply for an unlawful presence waiver in a particular scenario, whereas the I-601 can be used to waive a variety of grounds of inadmissibility. *See Patel v. Noem*, No. 24-C-12739, 2025 WL 965145, at *2 n.1 (N.D. Ill. Mar. 31, 2025). The core inquiry is not the differences

8

between the applications, for example, the timing for the filing (*e.g.*, before or after a consular interview), the circumstances (*e.g.*, while in the United States or abroad), the forms, or the filing fee (Filing No. 11 at 9).

Rather, the inquiry focuses on the statute that strips federal courts of jurisdiction.[4] And the statute at issue in *Soni* is nearly identical to that at issue here. *Compare* 8 U.S.C. § 1182(a)(9)(B)(v) ("No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause."), *with id.* § 1182(i)(2) ("No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)."). The language emphasized by the *Soni* court, "decision or action regarding," appears in both statutes and any differences in the provisions are minimal. That is, the only differences are the part of the statute to which the respective waiver applies (*i.e.*, the clause or subsection), and the preposition, "action of" rather than "action by." Both are of no consequence.

Plaintiffs cite a variety of out-of-circuit cases that have found jurisdiction exists (Filing No. 11 at 9). The Court is mindful of these cases, which all contemplated the same statutory provision discussed in *Soni*. *See Bamba v. Jaddou*, No. 1:23-CV-357, 2023 WL 5839593, at *2 (E.D. Va. Aug. 18, 2023), *Granados v. United States*, No. 23-cv-250, 2023 WL 5831515, at *3 (D. Colo. Aug. 23, 2023), *Lara-Esperanza v. Mayorkas*, No. 23-cv-01415, 2023 WL 7003418, at *1 (D. Colo. Oct. 24, 2023). The Court declines to simply brush *Soni* aside.

While the Court empathizes with Plaintiffs who, like many applicants, are frustratingly trapped behind a backlog of long and protracted wait times. Like *Soni*, the Court notes that 80% of I-601 applications are processed within 38 months. *See* https://egov.uscis.gov/processing-times/

---

[4] *See Dhakal v. Sessions*, 895 F.3d 532, 538 (7th Cir. 2018) (stating "the APA is not an independent grant of jurisdiction," rather, "where federal jurisdiction is not precluded by another statute, general federal question jurisdiction exists under 28 U.S.C. § 1331." (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977))).

(last visited March 30, 2026). Granted, this likely does not ease Plaintiffs' frustration, having eagerly awaited a response for over 30 months. But, as *Soni* states, it "is the duty of the Executive Branch to address this operational problem; [the Court's] duty is to abide by the law as enacted, including the prohibition on judicial review." 103 F.4th at 1273. The Court thus dismisses Plaintiffs' APA claims for lack of subject matter jurisdiction.

**B.      Mandamus Act**

In a mandamus action, district courts are empowered "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus 'is a drastic and extraordinary remedy reserved for really extraordinary causes.'" *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (citing *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)).

"Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (citing *Iddir v. Immigr. Naturalization Servs.*, 301 F.3d 492, 499 (7th Cir. 2002)). Plaintiffs have not met each condition because there is no clear right to relief provided in the relevant statute, nor have they shown that Defendants have a clear duty to act.

**1.  Right to Relief**

To determine whether there is a clear right, courts "look to the statute in question to determine what Congress directed." *Iddir*, 301 F.3d at 499. For I-601 waiver applications, "[t]he Attorney General may, in the discretion of the Attorney General, waive" someone found inadmissible because of misrepresentation "if it is established to the satisfaction of the Attorney General" that refusal would result in hardship. 8 U.S.C. §§ 1182(i)(1), 1182 (a)(6)(C)(i). This

10

provision is clearly discretionary; the Attorney General *may*, in her *discretion*, grant a waiver if it is established to *her* satisfaction that hardship would result. Unlike the term "shall," which "denotes a clear directive," the terms "'may' or 'in his discretion'" convey the opposite meaning. *See Iddir*, 301 F.3d at 499 (finding that plaintiff had established a right to relief because the statute "repeatedly command[ed] the Attorney General, in nondiscretionary language"). It cannot be said that the statute creates a right to have an application processed, especially within a specified time frame.

Of course, as Plaintiffs point out, "[r]egulations promulgated pursuant to statutory authority [do] have the force and effect of law" and can bind an agency to its regulations. *Bahramizadeh v. U.S. Immigr. Naturalization Servs.*, 717 F.2d 1170, 1173 (7th Cir. 1983). Plaintiffs argue that the text of the regulation, "USCIS will provide a written decision," *see* 8 C.F.R. § 212.7, creates a "clear and indisputable right." (Filing No. 11 at 15). But this is only "[i]f the waiver application is denied," *id.*, which has not yet occurred. And if it is approved, there is no obligation to send anything at all. More importantly, the absence of any text directing the agency to take any action, especially one within a specific time frame, supports the conclusion that there is no clear right. Plaintiffs have not met their burden of establishing a clear right to the requested relief.

### 2. **Agency Duty**

Nor is there a clear duty to do the act in question. Generally, a writ of mandamus may only compel "a ministerial duty owed by the agency and then only when the statute defining that duty is 'clear and free from doubt.'" *Banks v. Sec'y of Ind. Fam. & Soc. Servs. Admin.*, 997 F.2d 231, 244 (7th Cir. 1993) (citing *Jarecki v. United States*, 590 F.2d 670, 674 (7th Cir. 1979)). "It is manifest that the judiciary cannot compel through a writ of mandamus a federal official to perform any function unless the official is clearly directed by law to perform such a duty." *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir. 1978).

As the Court previously noted, § 1182(i)(1) is permissive—it permits the Attorney General to waive an application, but it does not require her to. Nor does the statute require an action within a specified time frame. While Plaintiffs point to a subsequent statute as evidence of Congress's expectation regarding application processing times, they concede that the statute does not bind USCIS. (Filing No. 11 at 18); *see* 8 U.S.C. § 1571(b) ("[T]he processing of an immigration benefit application *should* be completed not later than 180 days after the initial filing . . . .").

Plaintiffs take issue with the notion that applications could theoretically be pending indefinitely. They argue that the mandamus action survives dismissal because USCIS "must adjudicate [their] case within a reasonable time." (Filing No. 11 at 19). But "the consensus is that agency delay in face of a clear statutory duty (but in the absence of a statutory deadline) must be 'egregious' before it can convert agency inaction into a final action reviewable under the APA or warrant mandamus." *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 616 (7th Cir. 2003). Plaintiffs presuppose that USCIS has a clear statutory duty to act, which is not the case. Nothing in the statute or regulations establish a clear duty to act.

At this juncture, this is an issue for Congress and USCIS. Nothing Plaintiffs point to permits the Court to compel the USCIS to take an obligatory action, let alone an action within a specified time frame.[5] Importantly, because Plaintiffs cannot meet two of the essential requirements for mandamus relief, that claim must fail. In absence of a clear right to relief and clear duty owed to Plaintiffs, the Court must dismiss the claim for mandamus relief.

---

[5] Plaintiffs also argue that "USCIS charges a fee to adjudicate an application or petition," so the agency "has a corresponding duty to carry out adjudication." (Filing No. 11 at 16). They cite no authority in support, and the Court is unaware of any. The notion that a discretionary action can become a non-discretionary duty merely by virtue of the agency charging an application processing fee is unavailing. The case law makes clear that the inquiry focuses on whether there is a ministerial duty owed by the agency sufficiently defined by statute. *Banks*, 997 F.2d at 244. As the Court noted, the statute is absent regarding any duty at all.

## IV.     CONCLUSION

For the reasons set in this Order, Defendants' Motion to Dismiss (Filing No. 9) is **GRANTED**. Plaintiffs' ADA claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction, and Plaintiffs' mandamus claim is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

Final judgment will issue under separate entry.

**SO ORDERED**.

Date:    3/30/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Curtis Lee Morrison
Red Eagle Law, L.C.
curtis@redeaglelaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov

13